UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK LEONETTI, <br><br> Defendant. | NO. MJ22-5290 <br><br> GOVERNMENT'S MOTION FOR PRETRIAL DETENTION |

The government moves this Court to detain the defendant, Mark Leonetti, pending trial in this matter.

***Factual background.*** The facts of this case are set forth at length in the government's complaint in this matter, and so are not repeated here. *See* Dkt. 1.

***Eligibility for detention.*** Mr. Leonetti's case is eligible for detention because Mr. Leonetti is charged with violations of 18 U.S.C. § 875(c), which is a "crime of violence" under the Bail Reform Act. *See* 18 U.S.C. § 3142(f)(1)(A); *United States v. Kane*, No. 3:20-MJ-5054 TLF, 2020 WL 1660058, at *2 (W.D. Wash. Apr. 3, 2020) (Fricke, J.) (concluding that violations of 18 U.S.C. § 875(c) are crimes of violence); *United States v. Santoro*, 359 F. Supp. 3d 122, 126-128 (D. Maine 2019) (same); *United States v. Christy*, No. 3:18-CR-223, 2020 WL 2794617, at *3 n.5 (M.D. Pa. May 29, 2020) (same); *United States v. Capriotti*, No. 21-CR-16, 2021

MOTION FOR DETENTION – 1
*United States v. Leonetti* – MJ22-5290

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

WL 229660, at *3 (N.D. Ill. Jan. 22, 2021) ("Relatively few published judicial opinions discuss whether a Section 875(c) violation qualifies as a 'crime of violence' under the Act, but the Court has no trouble concluding that it does."); *see also U.S. v. De La Fuente*, 353 F.3d 766, 769-771 (9th Cir. 2003) (holding that the crime of interstate threats is a crime of violence under the United States Sentencing Guidelines, 18 U.S.C. § 16 (c)); *United States v. Mjoness*, 4 F.4th 967, 982 (10th Cir. 2021) (holding that a "conviction under § 875(c) for making an interstate threat to injure is a crime of violence and serves as a proper predicate crime to a violation of § 924(c)").

In any event, as described in the complaint's supporting affidavit, Mr. Leonetti has already engaged in explicit threats in retaliation against elected representatives he believed called local law enforcement or the FBI after his earlier threats. Those representatives are victims and potential witnesses in this case. Thus, the risk that Mr. Leonetti will "obstruct or attempt to obstruct justice, or threaten . . . or intimidate, or attempt to threaten . . . or intimidate, a prospective witness," 18 U.S.C. § 3142(f)(2)(B), is much higher than in an ordinary case, as here Mr. Leonetti has already done it. It is certainly sufficient to render the case eligible for detention.

***Appropriateness of detention.*** The government's core concern with respect to Mr. Leonetti is that there are no conditions that can adequately assure the safety of the community. The factors this Court must consider each favor detention here.

**Nature of the offense.** Mr. Leonetti is charged with making violent threats in voicemails left for the elected representatives of this country. Section 3142(g)(1) specifically provides that if the offense charges "is a crime of violence," that should weigh in favor of detention. 18 U.S.C. § 3142(g)(1).

In these threats, as described in the complaint, Mr. Leonetti graphically describes his desire or plan to "barbecue" members of Congress, to "peel them" inside out, or to murder them. The threatening voicemails are filled with racial,

MOTION FOR DETENTION – 2
*United States v. Leonetti* – MJ22-5290

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

religious, and ethnic slurs. Mr. Leonetti has left hundreds (perhaps thousands at this point) of voicemails for a wide variety of members of Congress. He typically leaves batches of 20-40 voicemails at a time. The most recent set of voicemails were left on December 5, 2022, just over a week ago, for another U.S. Senator. Mr. Leonetti has shown no indication that he will stop leaving or attempting to leave these voicemails if he is able to do so.

Mr. Leonetti's conduct is particularly disturbing because he has been visited multiple times by law enforcement and mental health workers and warned about the threats he was making. Leonetti not only did not stop, he called other members of Congress and taunted them for calling the police. For example, in March 2021, when the FBI visited him and asked him specifically about threats against a U.S. Senator he had recently left, he stated (amidst other nonsensical things) that he would kill that Senator "only if justified." He then left a voicemail stating that "potentially … someone has been listening to [U.S. Senator 1]'s messages because they sent an FBI f***** out."[1] He was thus aware that someone was receiving the many voicemails he was leaving, and that those voicemails had triggered the March 2021 visit from the FBI. Nonetheless, the flood of voicemails continued unabated.

Then, after leaving a new set of voicemails in early September 2022, Mr. Leonetti was again visited by mental health workers, coordinating with the local Longview Police Department. Mr. Leonetti was warned that his voicemails were threatening. He stated he had no intent to travel to D.C., but also stated he had weapons (other than firearms). After that visit, he then called U.S. Senator 1's office again, stating: "You called the locals. You called. Okay. … We'd have followed you. We'd have followed them right back to Minnesota. … Are you sure it wasn't you? Please be you bitch. Please be. You stupid Jew meat bitch. Jew meat? … Please have been you [U.S. Senator 1]. Uh, that rep, the Longview Police f****** you did

---

[1] Homophobic, racial, and ethnic slurs have been redacted from the complaint and this memorandum.

MOTION FOR DETENTION – 3
*United States v. Leonetti* – MJ22-5290

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

try to alert are already with [unknown] and [unknown]. … Okay? So I hope it was you. Bye-bye, adios if it was."

These offenses are serious and, as indicated in the final section below, have been taken seriously and have led to serious governmental disruption.

**Weight of the evidence.** The weight of the evidence is strong. Mr. Leonetti, when confronted, has not denied making certain threatening phone calls. He has admitted his phone number is the phone number used to make the calls. He left his name in at least one of the voicemails. His voice is distinctive, as are the statements he makes in the voicemails. And records from AT&T Corporation indicate that Leonetti is the subscriber of the phone number in question and that, at least for those calls for which location information was obtained, the calls were made from or near Leonetti's residence. Finally, that Leonetti has persisted in threatening members of Congress even after being warned that the voicemails were threatening indicates his knowledge that his voicemails were threatening and his intent to retaliate against members of Congress for involving "the locals."

**The history and characteristics of the person**. Mr. Leonetti has a criminal history that is unsurprising given the tendencies exhibited in his voicemails. He was arrested in 1996 for stalking; in 1997 for lighting material on fire; in 2001 for making a harassing communication; in 2009 for assaulting and interfering with a public safety officer and resisting arrest; and in 2014 for Menacing/Intimidation (includes Stalking). Of those, two led to misdemeanor convictions, and a third to a violation. The government has not yet had the opportunity to review Probation's report on Mr. Leonetti's criminal history. But, even from those records available to the government, it is clear his recent conduct is a continuation of longstanding issues Mr. Leonetti is facing.

More specifically, Mr. Leonetti appears to face significant mental health challenges. That is apparent from the content of his voicemails. Moreover, in 2020, at least one note from the county mental health team in Washington County, Oregon

MOTION FOR DETENTION – 4
*United States v. Leonetti* – MJ22-5290

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

indicated that Mr. Leonetti is "paranoid schizophrenic." But it is clear that he is not able to currently manage whatever illnesses or conditions he may have without external assistance, and the public's elected representatives are having to repeatedly respond to threats on their lives as a result. When he was arrested, he represented he was taking no medication.

**Nature and seriousness of the danger posed by release.** Finally, whether or not Mr. Leonetti ever intended to act on these threats, they constitute a danger to the safety of the community under the Bail Reform Act and disrupt the government's functions. The staffers who have listened to these voicemails may in some ways be used to receiving such drivel, so their reactions would be expected to be more muted than those of an ordinary recipient. But while staffers at times characterized Mr. Leonetti's voicemails as "rambling" or "vague," they have also forwarded them to the U.S. Capitol Police for evaluation, noting that the voicemails are "threatening," "disturbing," "unhinged," or in one instance, that the voicemails led the staffer to have "genuine concerns that this person may commit acts of violence against Jewish public officeholders."

In response to his voicemails, the U.S. Capitol Police have spent countless hours listening to the voicemails, assessing the threat posed by Mr. Leonetti, and coordinating with local law enforcement to interview him or evaluate his mental state. Moreover, on almost every occasion Mr. Leonetti leaves these threatening voicemails, the U.S. Capitol Police respond by offering the threatened members of Congress additional protection, and have in some cases indeed assigned an additional police presence to particular members of Congress. Mr. Leonetti's voicemails are treated with this caution because it is inherently difficult to evaluate when an individual making such threats will choose to act on them, as the recent attack on Paul Pelosi, the husband of U.S. Representative and Speaker of the House Nancy Pelosi, indicates. The threats, standing alone, have thus instilled fear in their recipients and have disrupted governmental functions.

MOTION FOR DETENTION – 5
*United States v. Leonetti* – MJ22-5290

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

  Multiple courts have concluded that threats, even without an expectation that the individual will act on them, are a danger to the community.  The Supreme Court made this point in *Virginia v. Black*, noting that true threats can be criminally proscribed because they, "by their very utterance[,] inflict injury."  538 U.S. 343, 359 (2003).  As the Court explained, "[t]he speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'"  *Id.* at 359-60.

  A magistrate judge similarly recently summarized the idea in detaining an individual in a case like this one.  The defendant had left a voicemail with "repeated, explicit threats to inflict injury and even death on several members of the U.S. Congress and upon President Joseph R. Biden Jr. and Vice President Kamala D. Harris."  *Capriotti*, 2021 WL 229660, at *4.  The defense argued that there was "no evidence of Defendant having intended to act upon that threat," because, among other things, the defendant had not traveled to Washington, D.C., and so the defense contended he was not a danger.  *Id.*  Nonetheless, the court concluded, the voicemails themselves constituted a danger to the community:

> The Court's decision depended not on whether Defendant had any intent to carry out his threats. The decision depended on the fact that the threats themselves were harmful. Threats, particularly those as explicit, graphic, and repeated as those alleged in this case, harm people. They terrorize people. They affect the safety, security and well-being of people. They induce fear. The Court's conclusion in this respect is not new at all, but the grounds for it bear repeating during these turbulent times. The long-held principle that threats are not constitutionally protected speech arises from a judicial determination that "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been

MOTION FOR DETENTION – 6
*United States v. Leonetti* – MJ22-5290

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> thought to raise any Constitutional problem." … The Supreme Court in *Chaplinsky* described constitutionally unprotected "fighting words" as among words "which by their very utterance inflict injury, so that any social benefit from their utterance is "outweighed by the social interest in order and morality." And so do threats.

*United States v. Capriotti*, No. 21-CR-16, 2021 WL 229660, at *5 (N.D. Ill. Jan. 22, 2021) (citations omitted); *see also United States v. Haddad*, No. 09-CR-115, 2014 WL 1493152, at *3 (N.D. Ill. Apr. 16, 2014) ("True threats always fall outside the ambit of First Amendment protections, … because they inflict injury by their very utterance." (internal quotations omitted)); *see also United States v. Gillenwater*, 749 F.3d 1094, 1101 (9th Cir. 2014) (characterizing threat offense with proof of some intent to act as "serious enough to establish an important governmental interest in . . . prosecution," noting the "lurid and distressing threats against a bevy of government officials and employees," and government's attempt "to protect through application of the criminal law the basic human need for security," and "to protect the very integrity of our system of government" (citation omitted)).

The same logic applies with equal or greater force here, in a case where the defendant has made clear he will not cease making these threats unless he is forced to. The Court should detain the defendant pending trial.

DATED this 14th day of December, 2021.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ William Dreher*
WILLIAM DREHER
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-3903

MOTION FOR DETENTION – 7
*United States v. Leonetti* – MJ22-5290

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970